[Cite as *In re J.M.*, 2020-Ohio-1410.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| IN THE MATTER: | JUDGES: |
| | Hon. William B. Hoffman, P.J. |
| J.M. | Hon. John W. Wise, J. |
| J.M. | Hon. Craig R. Baldwin, J. |
| | |
| | Case Nos. 2019 CA 00051, 2019 CA 00052, 2019 CA 00058 & 2019 CA 00059 |
| | |
| | O P I N IO N |


| | |
| --- | --- |
| CHARACTER OF PROCEEDINGS: | Appeal from the Licking County Court of Common Pleas, Juvenile Division, Case Nos. F2017-0063 & F2017-584 |
| | |
| JUDGMENT: | Affirmed |
| DATE OF JUDGMENT ENTRY: | April 9, 2020 |


APPEARANCES:

| For LCJFS | For Eric Moss |
| --- | --- |
| WILLIAM C. HAYES | JERMAINE COLQUITT |
| Licking County Prosecutor | 33 W. Main Street, Suite #109 |
| | Newark, Ohio  43055 |
| PAULA M. SAWYERS | |
| Assistant Prosecuting Attorney | Guardian Ad Litem |
| 20 S. Second Street, Fourth Floor | |
| Newark, Ohio  43055 | JOHN OBORA |
| | 29 S. Park Place |
| | Newark, Ohio  43055 |

For Naisha Moss

CAROLYNN FITTRO
FITTRO LAW, LLC
1335 Dublin Road, Suite 104D
Columbus, Ohio  43215

*Hoffman, P.J.*

{¶1}   In Licking County App. Nos. 2019 CA 00051 and 2019 CA 00052, appellant Naisha Moss ("Mother") appeals the June 21, 2019 judgment entries entered by the Licking County Court of Common Pleas, Juvenile Division, which overruled her objections to the magistrate's May 22, 2019 decision, recommending her parental rights, privileges, and responsibilities with respect to her two minor children ("the Children", collectively; "Child 1" and "Child 2", individually) be terminated, and permanent custody of the Children be granted to appellee Licking County Job and Family Services, Children Services Department ("LCJFS").  In Licking County App. Nos. 2019 CA 00058 and 2019 CA 00059, appellant Eric Moss ("Father") appeals the same judgment entries with respect to the termination of his parental rights, privileges, and responsibilities of the Children.

## STATEMENT OF THE FACTS AND CASE

{¶2}   Mother and Father are the biological parents of Child 1 and Child 2. On February 1, 2017, Mother and Child 1 presented at New Beginnings Domestic Violence Shelter where Mother reported she was the victim of domestic violence at the hands of Father.  Mother received notice to leave the shelter on February 7, 2017, due to her failure to follow shelter rules and comply with the requests of the staff.  LCJFS filed a request for an emergency ex-parte order of removal on February 7, 2017. Following a shelter care hearing on the same day, the trial court issued an ex-parte order placing Child 1 in the emergency temporary custody of LCJFS.  The trial court appointed Attorney John Obora as guardian ad litem for Child 1.

{¶3}   On February 8, 2017, LCJFS filed a complaint alleging Child 1 was dependent.  Mother had reported being homeless since November, 2016.  Mother was

unemployed and had no independent financial means to support herself and Child 1. While at the shelter, Mother's room, at times, smelled of marijuana and alcohol. The shelter staff observed Mother display unusual behavior including bathing Child 1 at 3:30a.m.; leaving Child 1 alone in a car seat while she went outside to smoke; and calling Child 1 various names such as "demon spawn". Mother's behavior was erratic while she was residing at the shelter. Mother refused to submit to drug screens at the shelter and at LCJFS. LCJFS also had concerns regarding a domestically violent relationship between Mother and Father. The trial court conducted an adjudicatory hearing on April 6, 2017, and found Child 1 to be dependent. Child 1 was placed in the temporary custody of LCJFS.

{¶4} Mother gave birth to Child 2 on August 17, 2017. Mother admitted using methamphetamine days prior to Child 2's birth. In addition to ongoing substance abuse issues, LCJFS continued to have concerns pertaining to Mother and Father's housing and financial instability, their volatile relationship, their mental health issues, as well as their lack of parent education. The trial court issued an ex-parte order placing Child 2 in the emergency temporary custody of LCJFS on August 18, 2017. On August 21, 2017, LCJFS filed a complaint alleging Child 2 was dependent. The trial court appointed Attorney Obora as guardian ad litem for Child 2. Parents were ordered to undergo evaluations and attend counseling at the Licking County Alcoholism Prevention Program or other approved drug and/or alcohol treatment program, and submit to random drug screening and breathalyzer testing. The trial court conducted an adjudicatory hearing on October 16, 2017, and found Child 2 to be dependent. Child 2 was also placed in the temporary custody of LCJFS.

**{¶5}** On January 18, 2018, LCJFS filed a motion for permanent custody. The magistrate conducted a hearing on LCJFS's motion on March 30, 2018. Via decision filed May 1, 2018, the magistrate denied LCJFS's motion and ordered a six month extension of temporary custody of Child 1. The magistrate did not order an extension of temporary custody relative to Child 2 as his case was only 8 months from its inception. The trial court approved and adopted the magistrate's decision via judgment entry filed May 1, 2018.

**{¶6}** On July 6, 2018, LCJFS filed a second motion for permanent custody. The trial court scheduled the matter for hearing on October 22, 2018. The guardian ad litem filed his written report on October 15, 2018. The trial court subsequently continued the matter to January 2, 2019. At the hearing, LCJFS requested a second extension of temporary custody of Child 1 and a first extension of temporary custody of Child 2. The magistrate granted the extensions until February 7, 2019, and February 18, 2019, respectively.

**{¶7}** On January 8, 2019, LCJFS filed a third motion for permanent custody. The motion came on for hearing before the magistrate on March 27, 2019.

**{¶8}** Kelsey Weisentstein, an ongoing social worker for LCJFS, testified she was assigned to the case in February, 2017, due to concerns over Parent's mental health, drug and alcohol abuse, unstable and unsafe housing, unemployment and economic instability, as well as domestic violence. Mother and Father's case plans required them to complete mental health assessments and follow all recommendations; complete substance abuse assessments and follow any recommendations; submit to random drug

screens; address domestic violence concerns; engage in parenting education; and obtain and maintain stable housing and employment.

{¶9} Mother completed her mental health assessment. She was diagnosed with adjustment disorder with depressed mood and stimulant dependence. Mother commenced treatment. Because Mother was often late to her appointments and eventually failed to attend appointments altogether, her case was closed. Mother did not reengage in counseling. Mother refused to accept responsibility for her actions and avoided accountability for the removal of the Children. Mother became suspicious and believed there was a conspiracy by LCJFS to keep the Children. Mother was belligerent with Weisenstein and made threats of killing the social worker in Facebook posts.

{¶10} Mother continued to use methamphetamines. Mother was discharged from substance abuse treatment in February, 2019. Mother's counselor, Deborah Esterline, testified Mother told her she had not used methamphetamine since October, 2017. At the hearing, Mother denied telling that to Esterline. When advised of the results of one of her drug screens during a visit with the Children, Mother began to scream obscenities at Weisenstein and accused LCJFS of trapping her. A sheriff's deputy eventually escorted Mother out of the facility. Social worker Stephanie Stevenson was assigned to the family thereafter. During a meeting with Stevenson on February 27, 2019, Mother admitted she had used methamphetamine that month. Mother also disclosed to Stevenson Father was emotionally abusive to her. At the hearing, Mother testified her last abuse of methamphetamine was December, 2018. Mother had not been employed at any time during the life of the case.

{¶11} Father completed his mental health assessment and was not referred for services. Father completed a substance abuse assessment in March, 2017. Father had two negative drug screens during the summer. After Father refused multiple drug screens in late 2017, he was asked to complete a second assessment in November, 2017. Father was attending a men's group and meeting with a counselor, but he had not been successfully discharged at the time of the hearing. Loretta Snoke, Father's counselor at Licking County Alcohol and Drug Prevention Program, testified Father continues to deny having any substance abuse issues. Father told Weisenstein his private time was not her business as he could use methamphetamines and still parent fine. In October, 2018, and again in February, 2019, Father told LCJFS staff if his drug screen was positive it was caused by being pricked by a dirty needle when he was renovating the apartment above his residence.

{¶12} Father had been employed with the Licking County Auto Auction for a period of time and reported having side jobs. In lieu of rent, Father is employed by the landlord refurbishing the entire duplex in which they live. Father also performs property maintenance tasks and side jobs for the landlord.

{¶13} Parents had each completed three out of ten parenting classes. Parents were living in the duplex Father was helping to renovate. The inside of the residence was last observed by LCJFS personnel in February, 2019, at which time the room designated for the Children was filled with unassembled furniture. Between February 27, 2019, and March 25, 2019, Stevenson attempted to contact Parents on seven occasions, but such efforts were fruitless.

{¶14} During the best interest portion of the hearing, Weisenstein testified the Children do not have any special needs. The Children are placed together in a family foster home. The placement is a foster to adopt situation. The Children are bonded to each other and with their foster family. Child 1, who is 3 ½ years old, refers to his foster mother as "mommy". The Children are comfortable in their foster family's care and home. Although Parents display appropriate interactions with the Children during visitation and they are bonded with the Children, Parents do not have insight into the issues which caused the removal of the Children from their care.

{¶15} Via decision filed May 22, 2019, the magistrate recommended Parents' parental rights, privileges, and responsibilities with respect to the Children be terminated and permanent custody of the Children be granted to LCJFS. The magistrate found Parents continued and repeatedly failed to remedy the concerns which led to the Children's removal. The magistrate also found Parents had refused to accept responsibility for and lacked insight into the issues which led to the Children's removal. The magistrate further found it was in the best interest of the Children to grant permanent custody to LCJFS. The trial court approved and adopted the magistrate's decision via Judgment Entry filed May 22, 2019. Mother filed objections to the magistrate's decision on June 3, 2019. Via Judgment Entry filed June 21, 2019, the trial court overruled Mother's objections.

{¶16} It is from this judgment entry Parents appeal.

{¶17} In Licking County App. Nos. 2019 CA 00051 and 2019 CA 00052, Mother raises the following assignments of error:

I. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN FINDING BY CLEAR AND CONVINCING EVIDENCE THAT IT WOULD BE IN THE BEST INTERESTS OF J.M. AND J.M. TO PERMANENTLY TERMINATE THE PARENTAL RIGHTS OF THEIR PARENTS AND PLACE THEM IN THE PERMANENT CUSTODY OF LICKING COUNTY JOB AND FAMILY SERVICES, CHILDREN SERVICES DEPARTMENT.

II. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION WHEN IT FOUND BY CLEAR AND CONVINCING EVIDENCE THAT J.M. AND J.M. COULD NOT BE PLACED WITH THEIR MOTHER WITHIN A REASONABLE TIME OR SHOULD NOT BE PLACED WITH THEIR MOTHER.

{¶18} In Licking County App. Nos. 2019 CA 00058 and 2019 CA 00059, Father raises the following assignments of error:

I. THE TRIAL COURT ERRED IN GRANTING PERMANENT CUSTODY OF THE MINOR CHILDREN TO THE LICKING COUNTY DEPARTMENT OF JOB AND FAMILY SERVICES BECAUSE THE STATE FAILED TO MEET ITS BURDEN BY CLEAR AND CONVINCING EVIDENCE.

II. THE TRIAL COURT IMPROPERLY TOOK JUDICIAL NOTICE OF THE FACTS CONTAINED IN A PRIOR PROCEEDING, ADMITTING

OVER OBJECTION FINDINGS OF FACT CONTAINED IN A PRIOR PERMANENT CUSTODY ADJUDICATION.

III. THE TRIAL COURT ERRED IN NOT REQUIRING THE GUARDIAN AD LITEM TO FILE A WRITTEN REPORT IN COMPLIANCE WITH R.C. 2151.414(C).

**{¶19}** These cases come to us on the expedited calendar and shall be considered in compliance with App. R. 11.2(C).

LICKING APP. NO. 2019 CA 00051

LICKING APP. NO. 2019 CA 00052

I, II

**{¶20}** We elect to address Mother's first and second assignments of error together. In her first assignment of error, Mother contends the trial court erred in finding it was in the Children's best interest to terminate her parental rights and grant permanent custody to LCJFS. In her second assignment of error, Mother challenges the trial court's finding the Children could not be placed with her within a reasonable time or should not be placed with her.

**{¶21}** As an appellate court, we neither weigh the evidence nor judge the credibility of the witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment. *Cross Truck v. Jeffries,* Stark App. No. CA5758 (Feb. 10, 1982). Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not

be reversed as being against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Constr.,* 54 Ohio St.2d 279, 376 N.E.2d 578 (1978).

**{¶22}** R.C. 2151.414 sets forth the guidelines a trial court must follow when deciding a motion for permanent custody. R.C. 2151.414(A)(1) mandates the trial court schedule a hearing and provide notice upon the filing of a motion for permanent custody of a child by a public children services agency or private child placing agency that has temporary custody of the child or has placed the child in long-term foster care.

**{¶23}** Following the hearing, R.C. 2151.414(B) authorizes the juvenile court to grant permanent custody of the child to the public or private agency if the court determines, by clear and convincing evidence, it is in the best interest of the child to grant permanent custody to the agency, and that any of the following apply: (a) the child is not abandoned or orphaned, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents; (b) the child is abandoned; (c) the child is orphaned and there are no relatives of the child who are able to take permanent custody; or (d) the child has been in the temporary custody of one or more public children services agencies or private child placement agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999.

**{¶24}** In determining the best interest of the child at a permanent custody hearing, R.C. 2151.414(D) mandates the trial court must consider all relevant factors, including, but not limited to, the following: (1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child; (2) the wishes of the child as

expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; (3) the custodial history of the child; and (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody.

{¶25} Therefore, R.C. 2151.414(B) establishes a two-pronged analysis the trial court must apply when ruling on a motion for permanent custody. In practice, the trial court will usually determine whether one of the four circumstances delineated in R.C. 2151.414(B)(1)(a) through (d) is present before proceeding to a determination regarding the best interest of the child.

{¶26} If the child is not abandoned or orphaned, the focus turns to whether the child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents. Under R.C. 2151.414(E), the trial court must consider all relevant evidence before making this determination. The trial court is required to enter such a finding if it determines, by clear and convincing evidence, that one or more of the factors enumerated in R.C. 2151.414(E)(1) through (16) exist with respect to each of the child's parents.

{¶27} As set forth in our statement of the facts and case, supra, as well as the magistrate's thorough 17 page May 22, 2019 decision, Mother failed to complete her case plan services. Mother continued to use methamphetamines. Mother lied about her last usage which resulted in her substance abuse counselor discharging her from treatment. Mother failed to reengage in mental health counseling after her case was closed due to her failure to attend. Mother's failure to address her own mental health issues prevented her from addressing Parent's domestic violence issues. Mother refused to accept

responsibility for her actions and avoided accountability for the removal of the Children. Mother had not completed parenting classes. LCJFS was unable to verify whether Mother had appropriate housing. Mother was unemployed throughout the pendency of the case.

**{¶28}** The Children do not have any special needs. They are placed together in a family foster home. The placement is a foster to adopt situation. The Children are bonded to each other and with their foster family. Child 1, who is 3 ½ years old, refers to his foster mother as "mommy". The Children are comfortable in their foster family's care and home.

**{¶29}** Based upon the foregoing, we find the trial court's finding it was in the best interest of the Children to grant permanent custody to LCJFS is not against the manifest weight of the evidence. We further find the trial court's finding the Children could not be placed with Mother within a reasonable period of time or should not be placed with her is not against the manifest weight of the evidence.

**{¶30}** Mother's first and second assignments of error are overruled.

LICKING APP. NO. 2019 CA 00058

LICKING APP. NO. 2019 CA 00059

I, II, III

**{¶31}** We need not address Father's assignments of error. Father appealed the trial court's June 21, 2019 judgment entry, overruling Mother's objections to the magistrate's May 22, 2019 decision. However, a review of the record reveals Father failed to file timely, written objections to the magistrate's decision.

**{¶32}** Civ. R. 53 provides:

b) *Objections to magistrate's decision.* * * *

ii) *Specificity of objection.* An objection to a magistrate's decision shall be specific and state with particularity all grounds for objection.

* * *

iv) *Waiver of right to assign adoption by court as error on appeal.* Except for a claim of plain error, a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party has objected to that finding or conclusion as required by Civ.R. 53(D)(3)(b).

**{¶33}** Because Father failed to properly object to the magistrate's May 22, 2019 decision in accordance with Civ .R. 53(D)(3), Father has waived the right to assign those issues as error on appeal. See, *Adams v. Adams,* 9th Dist. Wayne No. 13CA0022, 2014–Ohio–1327, ¶ 6.

**{¶34}** Based upon our Statement of the Facts, supra, and our review of the record, we do not find any of Father's assignments of error have merit, let alone rise to the level of plain error.

**{¶35}** Father's first, second, and third assignments of error are overruled.

{¶36} The judgment of the Licking County Court of Common Pleas, Juvenile Division, is affirmed.


By: Hoffman, P.J.

Wise, John, J.  and

Baldwin, J. concur